AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT

for the

District of Nebraska

FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA

FEB 8 - 2017

OFFICE OF THE CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| I-80 Self Storage Unit #A93 and Unit #A59, 1930 Fletcher Avenue, Lincoln, Nebraska | ) Case No. 8:17MJ34 |
| | ) |
| | ) |

**SEALE**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Search Warrant Affidavit

located in the _____ District of _____Nebraska_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Search Warrant Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841 & 846 | Conspiracy to distribute and PWID |
| 18:1957 and/or 1957 | Money Laundering |

The application is based on these facts:

See Attached Search Warrant Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Zach Wimer, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-8-17

_____
*Judge's signature*

Susan M. Bazis, Magistrate Judge
*Printed name and title*

City and state: Omaha, Nebraska

FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA

FEB 8 - 2017

OFFICE OF THE CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF NEBRASKA**

IN THE MATTER OF THE
APPLICATION FOR A SEARCH
WARRANT OF
[I-80 Self Storage Unit #A93
and Unit #A59, 1930 Fletcher
Avenue, Lincoln, Nebraska]
WITH DELAYED NOTIFICATION

8:17MJ34

**SEALED**

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Zach Wimer, being duly sworn, hereby depose and
state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.   I am a Special Agent with the U.S. Department of
Homeland Security, Homeland Security Investigations (HSI).
I am presently employed by HSI and have been so employed
since July 2010.   Prior to that, I was a Special Agent with
the United States Secret Service from 2006 to 2010, and a
Deputy Sheriff with the Dodge and Douglas County, Nebraska,
Sheriff's Departments from 1998 to 2006.

2.   I have received training pertaining to drug
trafficking, money laundering, and electronic and physical
surveillance procedures at the Federal Law Enforcement
Training Center in Glynco, Georgia.   I have been involved
in investigations dealing with the possession,
distribution, and importation of controlled substances, as

1

well as bulk currency smuggling investigations. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by drug traffickers to smuggle, safeguard, and distribute narcotics.

**BASIS FOR FACTS SET FORTH IN AFFIDAVIT**

3.     I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation. Conclusions I have reached are based on my training, experience, and upon information I believe to be reliable from the following sources:

a.     Oral and written reports about this and other investigations, which I have received from federal agents and local law enforcement officers;

b.     Physical surveillance conducted by federal agents and local law enforcement officers, the details of which have been reported to me either directly or indirectly; and

c.     Law enforcement databases.

4.     Unless otherwise noted, when I assert that a statement was made, I received the information from a law enforcement officer who provided the information to me,

2

either verbally or in a written report.   The officer had
personal knowledge of the information or received it from
another source.

## PURPOSE OF AFFIDAVIT

5.   This affidavit is made in support of an
application for search warrants to be executed on I-80 Self
Storage, unit #A93 and unit #A59, located at 1930 Fletcher
Avenue, Lincoln, NE (hereinafter **"Subject Premises 1"**).
**Subject Premises 1** is further described in Attachment **A**.

6.   Based upon the facts stated herein, I have reason
to believe that **Subject Premises 1** contains evidence,
instrumentalities, and fruits of violations of the
following offenses:

a.   Manufacturing, distributing, and/or
possessing with intent to distribute controlled substances,
in violation of 21 U.S.C. § 841(a)(1), to wit, Marijuana, a
Schedule I Controlled Substance;

b.   Conspiracy to possess with intent to
distribute, and to distribute, controlled substances, in
violation of 21 U.S.C. § 846;

c.   Money laundering in violation of 18 U.S.C.
§1956 and/or §1957.

3

**STATEMENT OF PROBABLE CAUSE**

7.    In October 2016, I obtained information that Marvell FIELDS had made several cash deposits to banks in Lincoln, Nebraska. The cash deposits were suspicious in the fact that they had an odor of marijuana. The deposits were also consistent with money laundering or structuring (multiple same-day cash deposits in different branch locations, large cash deposits under $10,000).

8.    On October 25, 2016, I conducted a query of the Nebraska Criminal Justice Information System (NCJIS) for Marvell FIELDS. I located a Nebraska driver's license (H12987812) in the name of Marvell FIELDS that listed an address of 8200 Cheney Ridge Road #401, Lincoln, Nebraska. I also located a white, 2015 Dodge Durango, VIN 1C4RDJEG9FC817787, Nebraska license plates TZN894 and registered to Marvell FIELDS at 8200 Cheney Ridge Road #401, Lincoln, Nebraska (hereinafter the TARGET VEHICLE).

9.    On October 25, 2016, I conducted open internet queries of Marvell FIELDS. I located an active Limited Liability Company account through the Nebraska Secretary of State in the name of Undergrind Musik LLC. The account lists the principal office address for Undergrind Musik LLC as 8200 Cheney Ridge Road #401, PO Box 83249, Lincoln, Nebraska. The Nebraska Secretary of State also lists

4

Undergrind Musik LLC as a contact for an inactive tradename for Snifflock. An open internet search of Snifflock revealed a website Snifflock.com. On the aforementioned website, Snifflock bags are described as the all-purpose, odor proof, heavy-duty, airtight double seal, lead proof, waterproof, and bug proof storage bag.

10. On October 27, 2016, I received information from Lancaster County Sheriff's Deputy Jason Mayo. Deputy Mayo, who served on a drug task force in the Lincoln, Nebraska, area for several years, identified Marvell FIELDS as an individual known to him as being involved in the distribution of marijuana in the Lincoln area.

11. On November 3, 2016, I conducted surveillance of 8200 Cheney Ridge Road #401, Lincoln, Nebraska. This address is within the Flats at 84 apartment complex. I observed the TARGET VEHICLE parked outside of building located at 8200 Cheney Ridge Road, Lincoln, Nebraska.

12. On November 4, 2016, I received reports from the Arizona Department of Public Safety (DPS) documenting the arrest of Stina Vongphakdy. On March 23, 2013, Vongphakdy was stopped for a traffic violation on Interstate 40 near Flagstaff, Arizona. Vongphakdy, the driver and lone occupant, was driving a vehicle rented by Marvell FIELDS, whom she identified during the traffic stop as her

5

boyfriend.   After observing several indicators of criminal activity, the DPS Officer conducted a probable cause search of the rental car.   During the search of the vehicle, DPS located approximately 266 pounds of marijuana hidden under a blanket in the rear cargo area.   The bundles of marijuana were packaged in large clear plastic bags marked "Original Space Bag".   Vongphakdy was arrested and later provided a post-Miranda interview in which she stated that she was driving the marijuana to an unknown location in Lincoln, Nebraska.

13.   On November 7, 2016, I received reports from the Yavapai County Sheriff's Department (AZ), detailing the seizure of $158,211 from Marvell FIELDS.   The reports indicate that on January 26, 2011, Marvell FIELDS was stopped on Interstate 17 in Yavapai County, Arizona, by a Yavapai County Sheriff's Deputy.   FIELDS was driving a 2007 Dodge Charger bearing Nebraska license plates RNB301 and registered to Marvell FIELDS at 2505 Evans Street, Omaha, Nebraska.   During the course of the traffic stop, the Yavapai County Sheriff's Deputy noted indicators of criminal activity and was granted permission to search the vehicle by FIELDS.   During the subsequent search, the Yavapai County Sheriff's Deputy located several bundles of US currency that totaled $158,211, hidden in a natural void

of the trunk and in different parts of the engine
compartment.  The bundles consisted of vacuum sealed bags
that were wrapped in plastic and then black electrical
tape.  The Yavapai County Sheriff's Deputy also noted that,
during the wrapping process, the bundles were soaked in a
WD40 type masking odor.

14.  On December 1, 2016, I conducted a NCJIS
Nebraska Wage Information query of FIELDS SSN 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.
The NCJIS Nebraska Wage Information queries Nebraska
employers whom report quarterly earned wages and
unemployment taxes paid for all of their Nebraska
employees.  The query of FIELDS SSN did not show any wages
earned in Nebraska.

15.  On December 13, 2016, HSI Omaha conducted
surveillance on FIELDS, starting at his place of residence,
8200 Cheney Ridge Road, Lincoln, Nebraska.  During the
aforementioned surveillance, the TARGET VEHICLE, driven by
FIELDS, was observed driving in a manner consistent with
counter-surveillance.  The counter-surveillance consisted
of the TARGET VEHICLE weaving in and out of heavy traffic,
driving at speeds above the posted speed limit, taking a
non-direct route, and proceeding through yellow traffic
signals just prior to the signals changing to red.

16.     During the surveillance, HSI Omaha agents observed FIELDS met with an individual, later identified as Samuel STARKEY, at STARKEY's place of residence 8610 Lexington Avenue, Lincoln, Nebraska. FIELDS and STARKEY were observed sitting in the TARGET VEHICLE outside of the apartment building.   Both individuals remained inside the TARGET VEHICLE for approximately 25 minutes before they departed in the TARGET VEHICLE.

17.     On December 14, 2016, I returned to the Lexington Avenue address and observed a white Dodge Charger bearing Nebraska license plates TSN044.  A NCJIS query of Nebraska license plates TSN044 showed that they are registered on a white, 2014 Dodge Charger to a Samuel STARKEY at 8610 Lexington Avenue #124, Lincoln, Nebraska. I then queried STARKEY's Nebraska driver's license photo through NCJIS and found it to match the individual I had observed with FIELDS on December 13, 2016.

18.  Continuing on December 14, 2016, I conducted further queries of STARKEY's criminal history through NCJIS.   The results showed that STARKEY is currently serving a two (2) year sentence of probation through the State of Nebraska after being convicted of Nebraska State Statute 28-416(1)(2)(B), Deliver or with Intent to Deliver a Schedule 1, 2, 3, drug.  Further investigation showed

8

that STARKEY was convicted after being found in possession
of approximately 1.1 pounds of marijuana.

19.   On January 4, 2017, the Honorable F.A. Gossett,
III, U.S. Magistrate Judge signed court order 8:16MJ442
authorizing the installation of a GPS tracking device on
the TARGET VEHICLE.  On January 5, 2017, HSI Omaha Special
Agents affixed the tracking device to FIELDS' vehicle.

20.   On January 10, 2017, while monitoring the GPS
tracker and conducting physical surveillance, I observed
FIELDS, while driving the TARGET VEHICLE, enter **Subject
Premises 1**.  FIELDS remained at **Subject Premises 1** for
approximately four (4) minutes before departing.  On the
same date, I reviewed the security camera footage of
FIELDS' visit.  FIELDS was observed entering the facility
while carrying what appeared to be a brown leather-style
briefcase.  FIELDS was observed accessing unit #A93 and
then departing without the aforementioned briefcase.  As
FIELDS exited the facility, his left hand remained inside
his coat pocket.

21.   Continuing on January 10, 2017, I-80 Self Storage
management identified the leaser of unit #A93 and unit #A59
as Paige Richardson.  Within the rental application, FIELDS
was listed as an alternate contact for both units.  The
rent on both unit #A93 and unit #A59 are paid in three

9

month increments. The most recent payment for both units was made on December 7, 2016, and time stamped as 3:05 PM. I reviewed the security camera footage from December 7, 2016, at 3:05 PM and observed FIELDS at the main customer counter conducting what appeared to be a payment transaction.

22. On February 7, 2017, I conducted surveillance on FIELDS and the TARGET VEHICLE through a combination of visual and electronic surveillance. At approximately 1000 hours, FIELDS, while driving the TARGET VEHICLE, arrived at Subject Premises 1. I later reviewed the security camera footage and observed FIELDS access Unit #A93 and depart with a large, black roller-style suitcase. Approximately 7 minutes later, FIELDS departed Subject Premises 1 in the TARGET VEHICLE. As FIELDS drove from Subject Premises 1 to STARKEY's residence, 8610 Lexington Avenue, Lincoln, Nebraska, I observed FIELDS drive in a manner consistent with counter-surveillance. FIELDS exited the main roadway and drove in a route similar to a square before re-entering the main roadway.

23. At approximately 1024 hours, FIELDS arrived at STARKEY's residence. FIELDS remained at STARKEY's residence until approximately 1106 hours. At that time, FIELDS departed and returned to his residence, 8200 Cheney

10

Ridge Road, Lincoln, Nebraska. FIELDS remained at his
residence until departing at approximately 1302 hours.
From his residence, FIELDS traveled back to Subject
Premises 1. I again reviewed the security footage from
Subject Premises 1 and observed FIELDS return what appeared
to the same large, black roller-style suitcase to Unit #93.
I also observed FIELDS to be carrying a small cardboard box
under his arm. A short time later, FIELDS reappears while
carrying a light colored camouflage backpack as he departs
Subject Premises 1.

24. After departing Subject Premises 1 with the
aforementioned backpack, FIELDS returned to STARKEY's
residence. I observed FIELDS arrive and park in the
parking lot near the entrance to STARKEY's apartment
building. After approximately 10 minutes, I observed
STARKEY pull into the parking lot and park near FIELDS.
STARKEY exited his vehicle and as he stood on the sidewalk
leading to the apartment building, he motioned for FIELDS
to come inside. FIELDS then exited the TARGET VEHICLE
carrying what appeared to be the same backpack as he was
seen carrying out of Subject Premises 1. Both FIELDS and
STARKEY then entered the residence. After approximately 20
minutes, FIELDS emerged from the apartment first carrying

11

what appeared to be a small box under his right arm.
FIELDS then entered and departed in the TARGET VEHICLE.

25.   Based on my training and experience conducting
drug trafficking and money laundering investigations, and
the patterns described above, I believe that FIELDS brought
drugs or drug proceeds to STARKEY, conducted an illicit
transaction, and ultimately returned the drugs/proceeds to
**Subject Premises 1.**

26.   Continuing on February 7, 2017, I contacted
Shannon Fisher, Property Manager of the Lexington Ridge
Apartments.   STARKEY's residence, 8610 Lexington Avenue
#124, is located within the Lexington Ridge Apartment
complex.   Fisher stated that they have received multiple
complaints from residents of 8610 Lexington Avenue
concerning the odor of marijuana in the building although
they have not been able to determine exact of source of the
odor.

27.   On February 8, 2017, I requested the assistance
of Lancaster County Sheriff's Office (LSO) K-9 Deputy Jason
Henkel.   With the permission of I-80 Self Storage, Deputy
Henkel was requested to deploy his Police Service Dog (PSD)
Sacha to conduct a free air sniff of **Subject Premises 1.**
PSD Sacha alerted and indicated to the odor of narcotics at
**Subject Premises 1,** and specifically, unit #A59 and unit

#A93. On unit #A59, PSD Sacha alerted and indicated near the bottom seam located below the handle. On unit #A93, PSD Sacha alerted and indicated near the west side of the door. Unit #A93 is located near an entrance and does not have an adjoining unit on its west side. PSD Sacha has been trained and certified to detect the odors of marijuana, methamphetamine, heroin, and cocaine since 2012.

## CHARACTERISTICS OF DRUG TRAFFICKERS/MONEY LAUNDERERS

28. Based on my training and experience I know the following:

a. Drug traffickers often maintain accounting of their drug sales, through books, records, customer lists, receipts, notes, ledgers and other papers relating to the transportation, ordering, sales and distribution of controlled substances and equipment, even though such documents may be in code. These books, records, receipts, notes, and ledgers are commonly maintained where the drug traffickers have ready access to them, for example in their homes, offices, and automobiles. Evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities and other criminal activities are also stored in the residences, offices, garages, storage buildings, automobiles, and safe deposit

boxes maintained by drug dealers.

b. Drug traffickers may rent storage lockers to store controlled substances and the traffickers often have in their immediate possession or in their residences, keys, receipts, and other documents evidencing the rental of said storage lockers.

c. Drug traffickers commonly maintain in their residences or storage units, addresses or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their criminal associates in the drug trafficking organization, and sometimes these address books are kept in code.

d. Drug traffickers frequently continue their criminal activity over months and even years. The traffickers typically will obtain and distribute controlled substances on a regular basis, and will also have an "inventory" which will fluctuate in size depending on the demand for the product.

e. Persons involved in drug trafficking organizations and gangs often conceal at their residences, storage units, or in vehicles, caches of drugs, drug paraphernalia, amounts of jewelry, automobile titles, financial documents, and other items of value and/or proceeds of drug transactions and evidence of financial

14

transactions relating to obtaining, transferring, secreting or spending large sums of money acquired from engaging in drug trafficking and other criminal activities.

f.     When drug traffickers amass large quantities of cash from the sale of drugs, the drug traffickers often attempt to legitimize these profits through the use of banks and financial institutions and their attendant services that include accounts, securities, traveler's checks, cashier's checks, money orders, wire transfers, stock certificates, bonds, certificates of deposit, and safety deposit boxes. Drug traffickers also launder money obtained from illegal drug transactions through legitimate businesses. Traffickers who are involved in such money laundering often structure financial transactions to avoid reporting requirements, and often keep records of their activities and financial transactions. However, to escape detection they mix and intermingle those records with records of lawful transactions, and that, in such instances, it is necessary to analyze the entire record to isolate the records of unlawful transactions, and not feasible to extract the records of unlawful activities without such analysis.

g.     Drug traffickers often place assets in names of relatives and close friends in order to avoid detection

of those assets by law enforcement agencies; and that even
though these assets are in other persons' names, the drug
dealers retain records, documents, and deeds reflecting the
purchase of those assets while continuing to use those
assets and exercise dominion and control over them.

h.    It is common practice for drug traffickers
to travel distances to purchase the drugs to facilitate
their own drug distribution, including crossing
international borders to obtain drugs or return with them.
Evidence of these travels can be probative of a drug
dealer's involvement in the distribution of narcotics.

## ITEMS TO BE SEIZED

*The items to be seized* are *evidence, fruits and
instrumentalities of violations of Title 18 United States
Code 1956, Money Laundering, Title 21 United States Code,
Section 841(a)(1), Possession with Intent to Distribute a
Controlled Substance, to wit, Cocaine, Marijuana, or
Methamphetamine, and Section 846, Conspiracy to Possess
with Intent to Distribute, Cocaine, Marijuana, or
Methamphetamine*

*specifically:*

a. Marijuana;

b. Methamphetamine;

c. Cocaine;

16

d. Items of personal property tending to establish the
   origin of the item listed above, including bills,
   receipts, ledgers, maps, business cards, catalogues,
   pamphlets, flyers, letters, telephone bills, address
   books, business cards, rolodexes, photographs,
   videos, and documents reflecting communications
   regarding illegal distribution of methamphetamine;

e. Books, records, receipts, account receivables and
   payables, notes, ledgers and other papers relating
   to the distribution of controlled substances
   transfers, and cashier's checks relating to the
   payment, receipt, concealment, transfer, or movement
   of assets;

f. Items of personal property which tend to identify
   the person(s) in control, possession, and ownership
   of the property that is the subject of this
   application, limited to personal telephone books,
   address books, telephone bills, and other items
   reflecting names, addresses, telephone numbers that
   document association among and between the targets
   and associates involved in drug trafficking;

g. Cash and currency in amounts greater than $500;

h. Paraphernalia for manufacturing, distributing,
   packaging, and weighing of methamphetamine,

17

including scales, measuring devices and packaging
materials;

29. Based on the foregoing facts and my training,
experience, and conversations with other law enforcement
officers, I conclude that there is probable cause to
believe that the fruits, evidence and instrumentalities of
violations of Title 18 United States Code 1956, Title 21,
United States Code, Section 841(a)(1), and Section 846 will
be found at **Subject Premises 1.**

30. It is requested that the Warrant and accompanying
affidavit and application in support thereof, as they
reveal an ongoing investigation, be sealed until further
order of the Court in order to avoid premature disclosure
of the investigation, guard against the flight of
fugitives, and better ensure the safety of agents and
others, except that copies of the Warrant in full or
redacted form may be maintained by the United States
Attorney's Office, and may be served by Special Agents and
other investigative and law enforcement officers of the
State of Nebraska, federally deputized state and local law
enforcement officers, and other government and contract
personnel acting under the supervision of such
investigative or law enforcement officers, as necessary to
effectuate the Warrant.

18

31. In accordance with 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), your Affiant requests that the Court delay notification of the execution of the search warrant, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

If notice of this warrant were served on the users or registered owners of the **Subject Premises 1** at the time of execution, it could result in flight from prosecution of organization participants, destruction of evidence or otherwise seriously jeopardize this ongoing investigation.

To ensure the safety of the executing Agent(s) and/or Officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize warrant service during both daytime and nighttime hours. Due to the close proximity of other businesses and during normal awake hours for organization members the execution during nighttime hours is most desirable.

## REQUEST FOR SEALING

32. I request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of

19

the investigation.  Accordingly, there is good cause to

seal these documents because their premature disclosure

would jeopardize the investigation.

WHEREFORE, Your Affiant respectively requests that the

Court issue a search warrant authorizing members of HSI or

their authorized representatives, including but not limited

to other law enforcement agents assisting in the above-

described investigation, conduct a search warrant at

**Subject Premises 1,** inside District of Nebraska.


Zach Wimer, Special Agent
Homeland Security Investigations


Subscribed and sworn to before me

this _____ day of February 2017.


Susan M. Bazis
United States Magistrate Judge

ATTACHMENT "A"

## Description of Premises to be Searched

I-80 Self Storage Unit #A93 is an indoor unit that faces south and is located in the northern-most row of storage units within the I-80 Self Storage facility. Unit #A93 consists of a white metal garage door, clearly marked "A93" in red lettering above the door.



ATTACHMENT "A" (continued)

### Description of Premises to be Searched

I-80 Self Storage Unit #A59 is an outdoor unit that faces west and is located in the northern-most row of storage units within the I-80 Self Storage facility. Unit #A59 consists of a blue metal garage door, clearly marked "A59" in red lettering above the door.



AO 93 (Rev. 11/13) Search and Seizure Warrant



# UNITED STATES DISTRICT COURT

for the

District of Nebraska

**SEALED**

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   8:17MJ34
I-80 Self Storage Unit #A93 and Unit #A59, 1930 )
Fletcher Avenue, Lincoln, Nebraska )
)

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Nebraska _____
*(identify the person or describe the property to be searched and give its location)*:

See Search Warrant Affidavit

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Search Warrant Affidavit

**YOU ARE COMMANDED** to execute this warrant on or before     February 21, 2017     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Susan M. Bazis, Magistrate Judge     .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     2-8-17 at 4:32

_____
*Judge's signature*

City and state:     Omaha, Nebraska

Susan M. Bazis, Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>8:17MJ34 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*